Filed 4/18/25  In re D.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re D.M., a Person Coming Under the Juvenile Court Law. | C100772 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.E.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. STK-JD-DP-2023-0000369, STA-FL-CU-SJ-2024-0002160) |

The mother of minor D.M. appeals from the juvenile court's orders granting father full legal and physical custody, issuing a two-year restraining order, and terminating dependency jurisdiction.  (Welf. & Inst. Code, §§ 213.5, 304, 395.)[1]  Mother contends

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

that (1) the restraining order must be vacated for failure to provide her with proper notice of the request; (2) the juvenile court abused its discretion in discontinuing visitation with the minor upon termination of the dependency; and (3) the San Joaquin County Human Services Agency (Agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Disagreeing, we shall affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

This case originated in Calaveras County. A prior dependency case was opened there in September 2019, due to concerns regarding ongoing verbal and physical domestic violence between mother and father, mother's unstable mental health, and mother's use of methamphetamine. The minor, born in October 2017, has special needs and is particularly vulnerable. The dependency was terminated in November 2021, with the minor in the care and custody of both parents.

In May 2022, law enforcement officers responded twice to domestic violence incidents between the parents. Mother disclosed multiple unreported domestic violence incidents and admitted using methamphetamine that father had reportedly purchased for her.

On June 15, 2022, a social worker found the family home unsanitary. That same day, father filed a request for a domestic violence restraining order as well as full custody of the minor, alleging mother had "lost her mind to drugs," and was harassing him. Father told the social worker that mother was delusional and using methamphetamine daily. The following day, a temporary restraining order (TRO) protecting father from mother was granted, but father's request for full custody was denied. A protective custody warrant was issued for the minor and, upon executing the warrant, the social worker found a methamphetamine pipe and knife within the minor's reach.

On June 20, 2022, Calaveras County Health and Human Services Agency (CHHS) filed a section 300 petition on behalf of the minor based on the parents' ongoing domestic

violence, mother's substance abuse and mental health issues, the unsafe condition of the home, and father's failure to protect the minor from mother's substance abuse and mental health issues.  The juvenile court ordered the minor detained.

The juvenile court sustained the allegations in the petition, noting the parents' long history of domestic violence, substance abuse, and failure to protect the minor, which was not only ongoing, but intensifying.  At the subsequent disposition hearing, the court adjudicated the minor a dependent, ordered her removed from the parents, and ordered reunification services (§ 361, subd. (c)).  Services for mother were to include counseling, psychological evaluation, parenting education, random drug testing, a substance use program, and a 12-step program.

Mother failed to comply with the service plan, continued using methamphetamine, and by the time of the six-month review hearing she was in a new abusive relationship. Father had made some progress in his service plan but not enough to return the minor to his care.  Reunification services were continued.

At the July 2023, 12-month review hearing, the court continued father's reunification services and terminated mother's services, reducing her supervised visitation.

In September 2023, CHHS recommended the minor be returned to father's custody with maintenance services and the matter be transferred to San Joaquin County where father resides.  Father was engaged in his case plan activities and demonstrating healthy behavioral changes.  Mother continued to demonstrate emotional and mental instability and to send father concerning messages.  In the two months since the review hearing, eight police reports were generated regarding mother, including physical altercations with her roommate.  CHHS requested the juvenile court enter a no-contact order protecting father, the minor (except during authorized visits) and the paternal grandmother.

On October 3, 2023, the juvenile court returned the minor to father with family maintenance services. The court transferred the case to San Joaquin County and issued a no-contact order, telling mother, "you'll need to stay away from [father], his mother and [minor] except for the arranged visitations." The San Joaquin County Superior Court accepted transfer in. Mother requested that her visits be increased and continue to occur in Calaveras County. The court gave the Agency discretion to hold the visits in Calaveras County but ordered the visits remain supervised once a month for one hour.

On January 31, 2024, father filed a section 388 petition for modification requesting the juvenile court terminate its jurisdiction over the minor. On February 14, he filed a request for a restraining order on form JV-245 in the now-current San Joaquin County dependency case. The court issued a TRO and set the hearing to coincide with the February 26, 2024, review hearing and the hearing on father's petition for modification. Both parents were ordered to attend the hearing.

Mother did not appear at the hearing. The juvenile court granted father's request for a restraining order protecting father and the minor from mother, terminated dependency jurisdiction, and entered exit orders granting father full physical and legal custody and denying mother visitation.

Mother appealed. This matter was fully briefed on December 31, 2024.

DISCUSSION

I

*Issuance of Restraining Order*

A juvenile court may issue two different types of restraining orders: TRO's, which may be issued without notice and hearing and can remain in effect for up to 25 days (§ 213.5, subd. (c)(1)); and restraining orders issued "upon notice and a hearing" that can remain in effect for up to three years (*id.*, subd. (d)(1)). Mother challenges the juvenile court's issuance of the two-year restraining order on the basis that she was not provided the requisite notice and opportunity to be heard. We conclude that mother had sufficient

4

notice prior to the issuance of the restraining order and was provided (and availed herself through counsel) the opportunity to be heard on the application. Thus, any error in service was harmless.

A. *Restraining Order Background*

Prior to transferring the matter to San Joaquin County, the Calaveras County Superior Court issued a no-contact order, prohibiting mother from contacting father and the minor, but allowing for court-ordered, monthly, supervised visits. The Agency provided copies of this order to the court and counsel and mother was present in court when the order was issued. At the January 17, 2024, hearing in San Joaquin County, the juvenile court explained that a restraining order would be necessary if father wanted law enforcement to be able to enforce the no-contact order.

At that same hearing, father requested the matter be set for a review hearing and consideration of his request that the court terminate dependency jurisdiction and award him full custody. When a hearing date of February 8, 2024, was discussed, counsel for the Agency expressly asked whether a restraining order request would be filed before the hearing, so as to provide mother with notice of the request. The juvenile court emphasized that if father was going to request a restraining order, he should file the request immediately and set it for hearing on February 8, 2024. The court ordered, with mother present, both parents to attend the February hearing, and explained the hearing would proceed even if they were absent.

Mother was not present at the February 8, hearing. Her attorney requested a continuance, stating mother had gone to the hospital for a medical emergency. The social worker was also ill. Finding good cause, the juvenile court continued the matter to February 26, 2024, again ordering both parents present, and again stating the hearing would proceed if they failed to appear. The court ordered mother's counsel to provide mother with notice of the hearing and noted that father's petition for modification (filed January 31, 2024, seeking termination of dependency jurisdiction with full custody to

5

father) and request for restraining order would be heard contemporaneously with the review hearing.

On February 14, 2024, father filed a request for restraining order on a form JV-245 in the present San Joaquin County dependency case. The request represented that he had notified mother's counsel of the request in open court on February 8, 2024, and served on her the domestic violence restraining order from Calaveras County. The request sought no contact, no abuse, and stay away orders protecting father and the minor based on mother's abusive behavior, domestic violence, threats and harassment. The request attached documentary evidence, including the previous request and domestic violence restraining order from Calaveras County.

That same day, the juvenile court issued a TRO and set the hearing on the restraining order request for February 26, 2024. As to service, the court checked the box reading: "[X] The person in [2] must be personally served with a copy of this order and *Request for Juvenile Restraining Order* (form JV-245), if form JV-245 was filed by (date):_____[.]" No date appeared.

Mother failed to appear at the February 26, 2024, hearing. The juvenile court called the matter on calendar for a contested review, as well as a restraining order. When asked if counsel was ready to proceed, mother's counsel responded that he had advised mother of the court date and told her that she needed to be present. He had not heard from her as to why she was not present.

Counsel represented that mother did not object to the dismissal, but she did object to the restraining order. Counsel had discussed the request for restraining order filed in Calaveras County with mother. He had advised her that he did not represent her in Calaveras County, but that the Calaveras County court had issued a TRO against her. Mother objected to a restraining order, believing insufficient evidence supported it. Mother's counsel represented that mother said she never talked to father or made any comments directed to him. Counsel also objected to the restraining order based on

6

incomplete notice, citing the court's order that mother be served with the restraining order request. Counsel remarked that he had received the restraining order request three or four days before the hearing, while the juvenile court's order said mother was to be personally served five days before the hearing. The court interjected, noting that mother had been ordered present in court for the previous hearing but had not appeared because she was ill. The court then proceeded with the hearing on the request for a restraining order.

Mother's counsel argued the evidence did not support issuing a restraining order, noting he had received the 200-page request electronically three days earlier. The juvenile court emphasized that mother had been ordered present for the hearing and revisited with her attorney the question of whether mother knew the restraining order was to be decided at the present hearing. Counsel noted that the request for restraining order had not yet been filed at the time of the February 8, 2024, hearing. The court then asked him whether he had informed mother that the restraining order was on calendar for the present hearing. Counsel answered that he told mother that father's attorney was asking for a restraining order and the court may hear that request, and he told her to be present. He also advised her of the Calaveras County request for a restraining order and gave her the date for that hearing. Father's counsel said he believed mother knew of the request for a restraining order because she had discussed it with the Agency's social worker. This information was confirmed by the Agency's counsel.

B. *Juvenile Court's Ruling*

The juvenile court issued a two-year restraining order, finding notice proper and the evidence sufficient. Mother was ordered to have no contact with father or the minor and to stay 100 yards away from them.

C. *Mother's Contentions*

Mother argues father was required, and failed, to personally serve her with the restraining order application and order to show cause. She also contends that the notice

7

provided to her counsel was insufficient.**2**  She specifically argues the notice requirement

set forth in Code of Civil Procedure section 527, subdivision (d)(2), must be incorporated

and met; this statute requires service of notice of the restraining order hearing on the

party to be restrained at least five days after the TRO or two days before the hearing.**3**

(Code Civ. Proc. § 527, subd. (d)(2).)  We disagree that reversal is required.

---

**2**  Mother notes, in passing, that her counsel received the notice and request for the
restraining order electronically, rather than by U.S. mail.  She also notes the discrepancy
between the number of pages counsel reported to have received and the fewer number of
pages the juvenile court had on file.  To the extent mother contends the manner by which
counsel received the notice and request, or the substance of the documentation counsel
received, requires reversal, such contentions are forfeited because counsel failed to object
on these bases in the juvenile court and because mother failed to separately argue or
develop the issues in her opening appellate brief.  (See *People v. Carmony* (2004) 33
Cal.4th 367, 375-376; Cal. Rules of Court, rules 8.204(a)(1)(B), 8.360(a) [each point in a
brief must be stated under a separate heading]; see *People v. Lombardo* (2020) 54
Cal.App.5th 553, 565, fn. 6 [declining to address an argument "because it was not stated
under a separate heading or subheading"]; *People v. McElroy* (2005) 126 Cal.App.4th
874, 884, fn. 3 [same].)

**3**  Code of Civil Procedure section 527, subdivision (d), provides that, in the case that a
TRO is granted without notice:  (1) the matter shall be made returnable on an order to
show cause generally within 15 days from the date the TRO was issued; (2) that the
applicant party "shall, within five days from the date the [TRO] is issued or two days
prior to the hearing, whichever is earlier, serve on the opposing party a copy of the
complaint if not previously served, the order to show cause stating the date, time, and
place of the hearing, any affidavits to be used in the application, and a copy of the points
and authorities in support of the application"; (3) that "[w]hen the matter first comes up
for hearing, if the party who obtained the [TRO] is not ready to proceed, or if the party
has failed to effect service as required by paragraph (2), the court shall dissolve the
[TRO]"; and (4) "The opposing party is entitled to one continuance for a reasonable
period of not less than 15 days or any shorter period requested by the opposing party, to
enable the opposing party to meet the application for a preliminary injunction.  If the
opposing party obtains a continuance under this paragraph, the [TRO] shall remain in
effect until the date of the continued hearing."

D. *Personal Service*

Even assuming mother was required to be personally served with the notice of the request for a restraining order and was not personally served, she has not established prejudice. "No judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of pleading, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

The record here supports the juvenile court's finding that mother had both notice of the request for a restraining order and an opportunity to be heard. Mother points to no statutory provision requiring her to be personally served with notice of the hearing, beyond the notice provided to her appointed counsel of record. She points only to the checked box on the TRO indicating the applicability of the (incomplete) sentence that reads: "[X] The person in [2] must be personally served with a copy of this order and *Request for Juvenile Restraining Order* (form JV-245), if form JV-245 was filed by (date):_____" with the date left blank.

To the extent the notice was incomplete because mother was not personally served in accordance with the juvenile court's form TRO, any error was harmless because mother had *actual* notice of the restraining order request and the hearing date. While mother's counsel did object to proceeding on the request for restraining order because the request had not been personally served on mother, he did not represent that mother did not know of the hearing or that her attendance was required. To the contrary, in response to the juvenile court's direct inquiry as to whether mother's counsel told mother the restraining order would be heard at the February 26, 2024, hearing, counsel replied: "*I indicated to her that father's attorney is asking for a restraining order and the Court may hear that, your Honor. I told her that she had to be here.* And then I advised her of the Calaveras County request for a restraining order and I gave her the date that . . . [father's counsel] [¶] . . . [¶] indicated in court. Like I said, I told mother I do not represent her in

9

that matter and she has not been served with this restraining order that he filed here."
(Italics added.)  We reject mother's strained reading of counsel's explanation as
establishing her counsel had provided her only with notice of when the Calaveras County
restraining order would be heard.   It is clear from the portion of the explanation that we
have italicized above that counsel was first referencing the San Joaquin County case.

In sum, the record establishes mother had actual notice that the juvenile court in
San Joaquin County would hear father's request for a restraining order at the February 26,
2024, hearing for which she failed to appear.  She was ordered to be present at the
hearing.  She had discussed the merits of the request for a restraining order with her
attorney prior to the hearing, who presented her position and argued on her behalf at the
hearing.  Thus, any error in failure to personally serve mother, beyond the service on her
appointed counsel, was harmless and reversal is not required.  (Cal. Const., art. VI, § 13.)

We further reject mother's suggestion that the failure to personally serve her
constituted structural error requiring reversal per se.  Mother's reliance on *Severson &*
*Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938 is misplaced.  In *Severson*, the
court issued a TRO against the responding party based on allegations he was severely
harassing Severson & Werson attorneys.  (*Severson*, at pp. 942-944.)  Service was later
effectuated on the responding party, but only four days before the scheduled hearing on
the restraining order, rather than the statutorily required five days before the hearing.  (*Id*.
at p. 943.)  The request for a restraining order was granted.  (*Id*. at p. 944.)  The
responding party did not personally attend the hearing and was not represented by
counsel.  (*Id*. at pp. 942-944.)  After being subsequently served with the final order, he
appealed, claiming the failure to serve him five days prior to the hearing voided the
court's actions.  (*Id*. at p. 944.)  The appellate court reversed, finding the responding
party's due process rights had been violated by failing to provide him with notice and an
opportunity to be heard and the ramifications of such failure were too speculative to
apply a harmless-error analysis.  (*Id*. at pp. 946-951.)  It also expressly limited its holding

10

to circumstances where the responding party did not appear at the hearing. (*Id*. at p. 949, fn. 7.)

Here, by contrast, mother was ordered to attend the hearing, and did not do so. She was, however, represented by counsel at the hearing, and counsel had notice of the hearing, had discussed the request for a restraining order with mother prior to the hearing, presented mother's position at the hearing, and challenged the evidence at the hearing. *Severson* is not on point here. (C.f. *Severson & Werson, P.C. v. Sepehry-Fard, supra*, 37 Cal.App.5th at p. 949, fn. 7 [expressly limiting holding to circumstances where responding party did not appear at the hearing].)

E. *Timing of Service*

We likewise reject mother's contention that reversal is required because her counsel had not been timely served with the restraining order request.

Section 213.5 and California Rules of Court, rule 5.630 govern the issuance of restraining orders in juvenile proceedings. (See also *In re L.W.* (2020) 44 Cal.App.5th 44, 49.) While TRO's may be issued without notice and a hearing, restraining orders may be issued only "upon notice and a hearing." (§ 213.5, subds. (c)(1) & (d)(1).) The specific amount of time necessary to satisfy the "notice" requirement for a restraining order is not delineated in section 213.5, but more than courtroom notice is required. (*In re Jonathan V.* (2018) 19 Cal.App.5th 236, 245.) Some advance notice is required to allow counsel the opportunity to prepare for the hearing. (See *Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 965.)

Mother acknowledges that neither section 213.5 nor California Rules of Court, rule 5.630, include any specific requirements for service of notice of the restraining order hearing. Instead, relying on the language in section 213.5, subdivision (a), mother argues requirements set forth in Code of Civil Procedure section 527 must be incorporated.

Section 213.5, subdivision (a) provides that while a dependency case is pending, the court may issue the "ex parte order . . . upon application in the manner provided by

11

Section 527 of the Code of Civil Procedure *or, if related to domestic violence, in the manner provided by Section 6300 of the Family Code*." (§ 213.5, subd. (a), italics added; c.f. *In re E.F.* (2021) 11 Cal.5th 320, 325, 327 [addressing the application of TRO notice requirements in juvenile delinquency case not involving domestic violence].) Because the restraining order at issue here *is* related to domestic violence, it appears that, by its own terms, the procedural requirements of Code of Civil Procedure section 527 do not apply. But even assuming for the sake of argument that they do, the claim of error is forfeited for failure to object in the juvenile court.

Applying the timing requirements in Code of Civil Procedure section 527, subdivision (d)(2), father would have been required to serve counsel five days after issuance of the TRO or two days before the hearing, *whichever is earlier*. Mother's counsel reported he received the documents three or four days before the February 26, 2024, hearing, while five days after the court issued the February 14, 2024, TRO would have been approximately seven days before the hearing. Thus, mother's counsel did not receive the documents five days after the TRO (the earlier of the two requirements). But mother's counsel did not object to the timing of the service he received, nor did he request a continuance, to which he would have been entitled. (See § 213.5, subd. (c)(2); Code. Civ. Proc., § 527, subd. (d)(4).) Counsel did not object to time or manner of the service, he did not represent that he was unprepared to go forward with the hearing, and he did not request a continuance to meet the request. Instead, he noted that he *had* gone through the Calaveras County request, "if they mimic the same restraining order," and proceeded to present mother's position arguing against the issuance of the restraining order. Thus, any objection to the service upon counsel of the request for restraining order was forfeited. (*In re Christopher S.* (1992) 10 Cal.App.4th 1337, 1344; *People v. Smith* (2001) 24 Cal.4th 849, 852; *In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412; see also *People v. Nguyen* (2017) 18 Cal.App.5th 260, 271 [claim of lack of notice can be forfeited by failure to object even when party claims due process violation].)

12

II

*Visitation*

Mother next contends we must reverse the exit order denying her visitation and contact with the minor. She argues that monitored visitation with the minor is not necessarily incompatible with the restraining order and, therefore, the juvenile court abused its discretion in ordering no visitation. As we explain, we find no abuse of discretion here.

A. *Section 362.4 Exit Orders*

When the juvenile court terminates dependency jurisdiction, it has the authority to issue orders addressing custody and visitation. (§ 362.4; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) Those orders focus on the minor's best interests. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) "If there is a pending marital or paternity proceeding relating to the child, the custody order will be transferred to the existing family court file. (See [§ 362.4,] subd. (b).) Otherwise, the order may be used to open a new file in the superior court of the county in which the parent who has been given custody resides. (See *id.*, subd. (c).) The order shall continue 'until modified or terminated by a subsequent order of the superior court.' (*Id.*, subd. (b).)" (*In re C.W.* (2019) 33 Cal.App.5th 835, 863.) "An order entered pursuant to section 362.4 is commonly referred to as an 'exit order.' " (*In re Nicholas H.*, *supra*, at p. 269.)

We review custody and visitation exit orders for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) Such determinations are not disturbed in a dependency proceeding in the absence of an arbitrary, capricious, or patently absurd exercise of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Maya L.* (2014) 232 Cal.App.4th 81, 102.) A court can also abuse its discretion by committing legal error. (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 161.)

13

B.  *Analysis*

Mother argues that, despite her continued drug use, her supervised visits with the minor were generally not problematic.  She adds that because monitored visitation is not necessarily incompatible with a restraining order, the juvenile court abused its discretion in issuing the no visitation order.

We agree that visitation is not necessarily precluded by a restraining order, but conclude that the circumstances here were such that denying visitation was well within the juvenile court's discretion.  During the dependency proceedings, mother's visitation with the minor had been professionally facilitated and supervised by the Agency.  The arrangements and minor's transportation for the visits did not involve father's participation or contact with mother.  Each visit, itself, was professionally supervised, including the visit supervisor's care of the special needs minor while waiting for mother, who often arrived late to the visit.  Now, upon termination of dependency jurisdiction, the Agency's facilitation and supervision of visitation would cease.  There would not be a plan in place to facilitate mother's visits in a manner that would not involve her contact with father or to provide safe, third-party supervision of such visits.  Nor was any alternative facilitation, supervision and safety plan proposed.  Accordingly, the no visitation order was not an abuse of discretion in this case.

To the extent appellate counsel now posits there may have been a safe way to allow for continued visitation, proposals not before the trial court cannot be advanced for the first time on appeal.  (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686.)  If mother can show that she has arranged visitation that is safely facilitated and supervised by an appropriate third party, she is not precluded from seeking a modification of the visitation order in the family court based on change of circumstances.  (§ 302, subd. (d); see also *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1163-1164; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 714.)

14

III

*ICWA Compliance*

Finally, mother contends conditional reversal of the juvenile court's exit orders is required because the juvenile court and Agency failed to fully comply with the inquiry requirements of the ICWA. She contends various relatives could have, but were not, contacted to inquire about possible Indian ancestry. She further argues that the minor's subsequent return to father's custody after having been detained and removed from parental custody, did not obviate the juvenile court's and the Agency's obligation to comply with the ICWA. The Agency responds that any ICWA inquiry error should be considered harmless in light of the juvenile court's dismissal of dependency jurisdiction.

We conclude that the order terminating jurisdiction renders mother's challenge to the ICWA finding moot because the Agency can no longer seek permanent foster care or the termination of parental rights in this proceeding. (See *In re Alexis H.* (2005) 132 Cal.App.4th 11, 14 ["By its own terms, [ICWA] requires notice only when child welfare authorities seek permanent foster care or termination of parental rights; it does not require notice *anytime* a child of possible or actual Native American descent is involved in a dependency proceeding"]; see also 25 U.S.C. § 1912(a); 25 C.F.R. § 23.11(a) (2018).)

ICWA notice is required when a hearing may culminate "in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement." (§ 224.3, subd. (a).) Here, the proceedings have terminated. The juvenile court no longer has jurisdiction over the minor, who is in the custody of father. Even assuming the Agency was required to interview additional relatives about the minor's possible Indian ancestry while these dependency proceedings were pending, there is no effective relief that can be granted and the matter is moot. (See *In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1316.)

15

DISPOSITION

The orders of the juvenile court are affirmed.

                                              /s/
                              Duarte, Acting P. J.


We concur:



      /s/
Mesiwala, J.



      /s/
Feinberg, J.